**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cistah Tsosie,　　　　　　　　　　　） | No.  CIV 03-1278-PCT-DKD |
| 　　　　　　Plaintiff,　　　　　　） | |
| 　　　　　　　　　　　　　　　　　） | **FINDINGS OF FACT AND** |
| vs.　　　　　　　　　　　　　　　） | **CONCLUSIONS OF LAW** |
| 　　　　　　　　　　　　　　　　　） | |
| United States of America,　　　　　） | |
| 　　　　　　　　　　　　　　　　　） | |
| 　　　　　　Defendant.　　　　　　） | |
| 　　　　　　　　　　　　　　　　　） | |
| _____） | |

　　　　Following a bench trial the Court herein makes its findings of fact and conclusions of law.  The Court notes that it had denied Defendant's Motion for Summary Judgment upon its finding that a genuine issue of material fact precluded summary judgment.  The Court reserved the resolution of the factual issue for trial.  However, prior to and at trial Defendant appears to have conceded the issue raised in its motion for summary judgment.  *See* Final Pretrial Order at p. 4, "Defendant Contends."  In addition, the Government ultimately conceded liability on the record during trial.  *Opening statement of Government counsel.*

## **FINDINGS OF FACT**

### **BACKGROUND**

　　　　1.  This personal injury action arises from an incident in which Plaintiff Cistah Tsosie was hit on the head and neck by a piece of metal flashing that fell from a building at the Wide Ruins Community School ("WRCS").  WRCS is funded by the United States Department of the Interior, Bureau of Indian Affairs.  *Defendant's Proposed Pretrial Order, filed June 24, 2005 (page 2, C(1)(a-e)).*

2.  Cistah Tsosie was born on the Navajo Reservation on February 14, 1945.  *Testimony of Cistah Tsosie.*

3.  Cistah Tsosie attended Bureau of Indian Affairs elementary schools in Klagetoh and Fort Defiance, Arizona and one year of high school at Phoenix Indian School.  *Testimony of Cistah Tsosie.*

4.  In 1971, Cistah Tsosie went to work full time at WRCS, which was at the time operated by Bureau of Indian Affairs as an elementary boarding school.  *Testimony of Cistah Tsosie.*

5.  Cistah Tsosie worked as a Home Living Assistant throughout her tenure at WRCS where her duties included cleaning the dormitories, supervising the children in the dormitory, and from time to time serving as a bus driver, search and rescue person, fire fighter and a substitute teacher on an as needed basis.  *Testimony of Cistah Tsosie.*

6.  A large number of the children at WRCS came from broken homes or were victims of abuse and neglect.  They looked to Cistah Tsosie as a surrogate mother and called her "grandma".  *Testimony of Cistah Tsosie.  Testimony of Amada Tso. Testimony of Thomiscita Mountainsheep.*

7.  Cistah Tsosie was active in the Indian Heritage Club and taught the children Navajo culture, Navajo tradition, arts and crafts, and cheerleading.  *Testimony of Cistah Tsosie. Testimony of Amada Tso.  Testimony of Thomiscita Mountainsheep.*

8.  Cistah Tsosie thoroughly enjoyed her  work and planned to work at Wide Ruins Community School at least through age 65.  *Testimony of Cistah Tsosie.*

9.  Cistah Tsosie derived pleasure from working with the children at WRCS.  *Testimony of Cistah Tsosie.*

10.  Cistah Tsosie married Daniel Tsosie in 1970.  *Testimony of Cistah Tsosie.*

11.  Cistah Tsosie and her husband had a close relationship and happy marriage before the accident of August 29, 2002.  *Testimony of Cistah Tsosie.  Testimony of Danley Tsosie.*

12.  Daniel Tsosie has some medical problems including diabetes.  *Testimony of Cistah Tsosie.*

13.  Cistah Tsosie took care of her husband before her accident in August, 2002. *Testimony of Cistah Tsosie.*

14.  Cistah Tsosie provided the primary support for her family by means of her salary from WRCS and a pension from the United States government.  *Testimony of Cistah Tsosie. Exhibit 13.*

15.  Cistah Tsosie has seven children and fourteen grandchildren.  *Testimony of Cistah Tsosie.*

16.  Prior to the accident of August 29, 2002, Cistah Tsosie derived pleasure from teaching her children and grandchildren Navajo traditions, raising livestock, butchering sheep, raising and riding horses, cooking, dancing, singing, gardening, and making arts and crafts.  She also attended Pow Wows in Utah, Arizona, California, Texas, New Mexico and Nevada. *Testimony of Cistah Tsosie.  Testimony of Danley Tsosie.*

17.  Cistah Tsosie took an active part in the Pow Wows by dancing, cooking, and socializing.  *Testimony of Cistah Tsosie.  Testimony of Thomiscita  Mountainsheep.*

18.  Prior to the accident of August 29, 2002, Cistah Tsosie participated in services, singing and social activities at The Church of Jesus Christ of Latter-Day Saints, located in Sanders, Arizona, which she attended approximately twice a month.  *Testimony of Cistah Tsosie.  Testimony of Danley Tsosie.*

19.  Prior to the accident of August 29, 2002, Cistah Tsosie also participated in the Native American Church.  *Testimony of Cistah Tsosie.  Testimony of Thomiscita Mountainsheep.*

20.  Prior to the accident of August 29, 2002, Cistah Tsosie participated in traditional Native American religious ceremonies, which included preparing food, dancing, singing, and praying.  *Testimony of Cistah Tsosie.  Testimony of Thomiscita Mountainsheep.*

21.  Prior to the accident of August 29, 2002, Cistah Tsosie raised and rode horses. *Testimony of Cistah Tsosie.*

22.  Prior to the accident of August 29, 2002, Cistah Tsosie wove Navajo rugs and saddle blankets.  *Testimony of Cistah Tsosie. Testimony of Thomiscita Mountainsheep.*

23.  Cistah Tsosie owns a house close to Wide Ruins, which she refers to as "Sheep Camp".  Sheep Camp is a compound of buildings on Cistah Tsosie's land where the family raises sheep, goats, horses, and cows, as well as maintains a garden for crops.  *Testimony of Cistah Tsosie.  Testimony of Danley Tsosie.*

24.  Prior to August, 2002, Cistah Tsosie was in charge of Sheep Camp, although she hired a person to take care of the livestock while she worked and lived at the school.  *Testimony of Cistah Tsosie.*

25.  Prior to the accident of August 29, 2002, Cistah Tsosie enjoyed working in her garden at the Sheep Camp where she grew corn, squash, pumpkins, watermelons and cantaloupe.  *Testimony of Cistah Tsosie.*

26.  Prior to the accident of August 29, 2002, Cistah Tsosie worked in her cornfields harvesting the corn and preparing it for feasts.  *Testimony of Cistah Tsosie.*

27.  Cistah Tsosie was physically active at work prior to the injury of August 29, 2002. *Testimony of Cistah Tsosie.  Testimony of Amada Tso.*

28.  Cistah Tsosie was physically active in her personal life prior to the injury of August 29, 2002.  *Testimony of Cistah Tsosie.  Testimony of Danley Tsosie.  Testimony of Thomiscita Mountainsheep.  Testimony of Barrie Ross, M.D., a board certified specialist in rehabilitation medicine (deposition transcript 33:4-7).*

29.  At the time of the accident of August, 2002, Cistah Tsosie lived with her husband and children in housing attached to one of the dormitory structures on the property of WRCS. *Testimony of Cistah Tsosie.*

30.  Cistah Tsosie was in good health prior to the injury of August 29, 2002.  *Testimony of Cistah Tsosie.  Testimony of Thomiscita Mountainsheep.  Testimony of Cistah Tsosie.*

1   *Testimony of Barrie Ross, M.D., a board certified specialist in rehabilitation medicine*

2   *(deposition transcript 49:25-50:1).*

3   ### DAMAGES

4      31.  On August 29, 2002, Cistah Tsosie suffered serious injuries when a piece of metal

5   flashing fell off the building, striking her in the back of the head and neck and rendering her

6   unconscious.  See *Defendant's Proposed Final Pretrial Order, filed June 24, 2005 (Page 2,*

7   *C(1)(b)(d)).  Testimony of Cistah Tsosie.*

8      32.  After regaining consciousness, Ms. Tsosie crawled to a phone and called for help.

9   *Testimony of Cistah Tsosie.*

10     33.  Immediately following the accident, Ms. Tsosie had difficulty seeing the numbers

11  on the phone.  *Testimony of Cistah Tsosie.*

12     34.  Cistah Tsosie was transferred by ambulance to Sage Memorial Hospital (in Ganado)

13  where she was admitted and treated for her injuries.  *Testimony of Cistah Tsosie.  Exhibit 3:*

14  *Discharge Summary from Sage Memorial Hospital dated September 1, 2002.*

15     35.  At Sage Memorial Hospital, Ms. Tsosie was diagnosed with a "significant

16  concussion", and suffered from "severe spasms" in her neck, vertigo, nausea, pain and

17  discomfort.  *Exhibit 3:  Discharge Summary from Sage Memorial Hospital dated September 1,*

18  *2002.*

19     36.  Following the incident of August 29, 2002 through the present day, Ms. Tsosie

20  continues to suffer from headaches.  She testified at trial that the headaches are "much better."

21  *Testimony of Cistah Tsosie.  Exhibit 5:  Emergency Visit Record from Gallup Indian Medical*

22  *Center dated December 28, 2002.  Exhibit 7:  medical record from Sage Rural Health Clinic*

23  *dated October 3, 2003.  Testimony of Barrie Ross, M.D., (deposition transcript 26:4-10).*

24     37.  Dr. Ross offered her opinion that Cistah Tsosie's headaches are permanent.

25  *Testimony of Barrie Ross, M.D., (deposition transcript 26:21-23).*

26     38.  Following the incident of August 29, 2002 through the present day, Ms. Tsosie

27  continues to suffer from vertigo/dizziness.  *Testimony of Cistah Tsosie.  Exhibit 5:  Emergency*

28

1  *Visit Record from Gallup Indian Medical Center dated December 28, 2002.  Exhibit 7:*
2  *medical record from Sage Rural Health Clinic dated October 3, 2003.  Exhibit 9:  Medical*
3  *record from Gallup Indian Medical Center- Ear, Nose and Throat Clinic dated July 7, 2004.*
4  *Testimony of Barrie Ross, M.D., (deposition transcript 23:9-24 and 25:10-16).*

5  39.  Dr. Ross offered her opinion that Ms. Tsosie's vertigo/dizziness is permanent.
6  *Exhibit 10:  Medical record from Gallup Indian Medical Center- Ear, Nose and Throat Clinic*
7  *dated August 9, 2004.  Testimony of Barrie Ross, M.D., (deposition transcript 24:20-25).*

8  40.  The vertigo/dizziness is not constant and it is relieved by medication.  *Testimony of*
9  *Cistah Tsosie.*

10  41.  Following the incident of August 29, 2002 through the present day, Ms. Tsosie
11  continues to suffer from diplopia (double vision).  Ms. Tsosie testified at trial that it is a little
12  bit better than before.  *Testimony of Cistah Tsosie.  Testimony of Barrie Ross, M.D., (deposition*
13  *transcript 28:5-15).  Exhibit 1:  Report of Barrie Ross, M.D.*

14  42.  Dr. Ross offered her opinion that Ms. Tsosie's diplopia is a permanent condition.
15  *Testimony of Barrie Ross, M.D., (deposition transcript 28:16-20).*

16  43.  Following the incident of August 29, 2002 through the present day, Ms. Tsosie
17  continues to suffer from neck pain.  *Testimony of Cistah Tsosie.  Exhibit 4:  Physical Therapy*
18  *Treatment Plan from Sage Memorial Hospital dated September, 9, 2002.  Testimony of Barrie*
19  *Ross, M.D., (deposition transcript 27:3-5, 32:2-13, 33:21-22).*

20  44.  Following the incident of August 29, 2002 through the present day, Ms. Tsosie
21  continues to suffer from back pain.  *Testimony of Cistah Tsosie.  Exhibit 4:  Physical Therapy*
22  *Treatment Plan from Sage Memorial Hospital dated September, 9, 2002.  Testimony of Barrie*
23  *Ross, M.D., (deposition transcript 27:4-6, 32:14-23, 33:21-22).*

24  45.  Following the incident of August 29, 2002 through the present day, Ms. Tsosie
25  continues to suffer from shoulder pain.  *Testimony of Cistah Tsosie.  Exhibit 4:  Physical*
26  *Therapy Treatment Plan from Sage Memorial Hospital dated September, 9, 2002.  Testimony*
27  *of Barrie Ross, M.D., (deposition transcript 31:21-32:1, 34:9-10).*

28

1    46.  Dr. Ross offered her opinion that Ms. Tsosie's musculoskeletal pain is permanent

2    and chronic.  *Testimony of Barrie Ross, M.D., (deposition transcript 33:12-25).*

3    47.  Following the incident of August 29, 2002, Ms. Tsosie was diagnosed with an inner

4    ear concussion and lost the hearing in her left ear.  *Exhibit 9:  Medical Record from Gallup*

5    *Indian Medical Center – Ear, Nose and Throat Clinic dated July 7, 2004.  Exhibit 10:  Medical*

6    *Record from Gallup Indian Medical Center – Ear, Nose and Throat Clinic dated August 9,*

7    *2004.  Testimony of Barrie Ross, M.D., (deposition transcript 31:4-15).*

8    48.  Cistah Tsosie's loss of hearing is the result of neurological damage resulting from

9    the accident of August 29, 2002.  *Testimony of Barrie Ross, M.D., (deposition transcript 31:11-*

10   *15).*

11   49.  Dr. Ross offered her opinion that Cistah Tsosie's hearing loss is permanent.

12   *Testimony of Barrie Ross, M.D., (deposition transcript 31:16-17).*

13   50.  Since the accident of August 29, 2002, Cistah Tsosie has suffered from a sleep

14   disorder.  *Testimony of Barrie Ross, M.D., (deposition transcript 27:1-11).*

15   51.  Cistah Tsosie suffers emotional damages as a result of the August 29, 2002 accident.

16   *Exhibit 2:  Psychiatric Evaluation reports from Gerald Fredman, M.D., a board certified*

17   *psychiatrist dated August 8, 2003 and June 17, 2005.  Testimony of Danley Tsosie.  Testimony*

18   *of Thomiscita Mountainsheep.  Exhibit 1:  Report of Evaluation from Barrie Ross, M.D.*

19   52.  Cistah Tsosie was diagnosed with a major depressive disorder, anxiety with panic

20   attacks, post traumatic stress disorder, psychosis and mood congruent auditory, visual, and

21   tactile hallucinations, and a deficit in her short term memory.  *Exhibit 2:  Psychiatric Evaluation*

22   *Reports from Gerald Fredman, M.D., dated August 8, 2003 and June 17, 2005.*

23   53.  Cistah Tsosie received some treatment following her first evaluation with Dr.

24   Fredman, which resulted in a slight improvement to her depression, but the diagnosis remains

25   unchanged.  *Testimony of Gerald Fredman, M.D., (deposition transcript 24:6-8).*

26

27

28

54.  Cistah Tsosie's pain and depression improved slightly from the time of the accident to the present day.  *Testimony of Danley Tsosie.  Testimony of Thomiscita Mountainsheep. Testimony of Gerald Fredman, M.D., (deposition transcript 21:18-21, 31:7-8, 37:19-20).*

55.  Cistah Tsosie went to at least sixty-four (64) medical appointments from August 29, 2002 through June 14, 2005.  *Exhibit 11:  Summary of past medical expenses.*

56.  Cistah Tsosie missed some medical appointments from August 29, 2002 through September 26, 2005 due to difficulty getting time off work as well as transportation difficulties. *Testimony of Cistah Tsosie.  Testimony of Amada Tso.*

57.  Cistah Tsosie was diagnosed with a Mild Traumatic Brain Injury on June 23, 2005. *Exhibit 1:  Report of Examination by Barrie Ross, M.D., dated June 23, 2005.  Testimony of Barrie Ross, M.D., (deposition transcript 14:12 – 15:16).*

58.  Cistah Tsosie is no longer able to drive due to her medical condition, particularly due to dizziness, vertigo and cognitive deficits.  *Testimony of Cistah Tsosie.  Testimony of Danley Tsosie.  Testimony of Barrie Ross, M.D., (deposition transcript 25:24-25, 42:25-43:9).*

59.  The Court heard expert and lay testimony that Cistah Tsosie now requires someone to be with her at all times for her own safety.  *Testimony of Thomiscita Mountainsheep. Testimony of Danley Tsosie.  Testimony of Barrie Ross, M.D., (deposition transcript 18:15-17).*

60.  In light of Ms. Tsosie improvements since her examination by Dr. Ross and her appearance at trial during her direct examination, the Court does not believe Ms. Tsosie requires someone to be with her at all times for her own safety.  The cited concern that she might leave the stove on could be addressed more reasonably by other means short of a full time caretaker.

61.  The trial testimony demonstrated by a preponderance of the evidence that the August 29, 2002 accident upended Ms. Tsosie's life.  She suffered an acute physical injury which was the proximate and legal cause of several chronic maladies which have dramatically altered the quality of her life.

62.  Plaintiff proffered the expert medical opinions of Barrie Ross, M.D., a board certified specialist in rehabilitation medicine.  Defendant offered no expert medical opinion to

1   rebut Dr. Ross' opinions.  Moreover, Dr. Ross appeared to be well qualified in experience and

2   training.  The credibility of her testimony was bolstered by the facts that she has been retained

3   by the U.S. Attorney's Office for the District of New Mexico in more than twenty cases and that

4   she was currently retained by that office and that she testifies primarily for defendants when

5   retained.  Thus her statement that "I've seen malingers in my practice.  I see over 100 patients

6   a week.  I would stake my reputation on this, this patient is not malingering" carries significant

7   weight – especially when completely unchallenged by any rebutting expert testimony.

8   *Testimony of Barrie Ross, M.D.*

9        63.  Cistah Tsosie feels sad about her current relationship with her husband.  *Testimony*

10  *of Cistah Tsosie.*

11        64.  Cistah Tsosie has experienced memory loss, following the accident of August 29,

12  2002. *Testimony of Cistah Tsosie.  Testimony of Barrie Ross, M.D. (deposition transcript 18:5-*

13  *12).  Testimony of Gerald Fredman, M.D., (deposition transcript 16:6-13).*

14        65.  Dr. Ross offered her opinion that Cistah Tsosie's memory deficits are permanent.

15  *Testimony of Barrie Ross, M.D., a board certified specialist in rehabilitation medicine*

16  *(deposition transcript 20:13-19).*

17        66.  As a result of the vertigo caused by the accident of August 29, 2002, Cistah Tsosie

18  has sustained two subsequent falls which bruised her ribs and fractured her ankle.  *Testimony*

19  *of Cistah Tsosie.  Exhibit 6:  Emergency record from Gallup Indian Medical Center dated*

20  *August 28, 2003.  Exhibit 8:  Medical record from Ft. Defiance Indian Hospital dated January*

21  *12, 2004.  Testimony of Barrie Ross, M.D., (deposition transcript 24:12-19).*

22        67. Cistah Tsosie's quality of life has diminished as a result of this accident.  *Testimony*

23  *of Cistah Tsosie.  Testimony of Thomiscita Mountainsheep.  Testimony of Danley Tsosie.*

24        68.  Cistah Tsosie will never regain the quality of life she enjoyed prior to the accident

25  of August 29, 2002.  *Testimony of Barrie Ross, M.D. (deposition transcript 43:10-14).*

26  *Testimony of Gerald Fredman, M.D. (deposition transcript 30:22-31:1).*

27

28                                              - 9 -

69.  When Cistah Tsosie returned to work after a two month absence, she was not able to perform satisfactorily the duties of her job following the accident of August 29, 2002. *Testimony of Cistah Tsosie.  Testimony of Amada Tso.*

70.  Cistah Tsosie received an "unsatisfactory" evaluation by her supervisor following the accident.  *Testimony of Cistah Tsosie.  Testimony of Amada Tso.*

71.  Cistah Tsosie lost her job on December 17, 2004.  *Testimony of Cistah Tsosie. Testimony of Amada Tso.  Exhibit 2:  Report of Gerald Fredman, M.D., dated June 17, 2005 (page "FREDMAN 012").*

72.  Two other employees who kept their jobs had less seniority than Cistah Tsosie. *Testimony of Amada Tso.*

73.  Cistah Tsosie planned to work at least until age 65.  *Testimony of Cistah Tsosie.*

74.  Cistah Tsosie lost at least five years of full-time income due to her dismissal from the job.  *Testimony of Cistah Tsosie.*

75.  Cistah Tsosie made $16.48 per hour while she was working at WRCS.  *Exhibit 13, employment contract between Cistah Tsosie and WRCS.*

76.  Cistah Tsosie worked 1600 hours per year at WRCS.   *Exhibit 13, employment contract between Cistah Tsosie and WRCS.*

77.  Cistah Tsosie is unable to work at the job she held prior to the accident of August 29, 2002.  *Testimony of Cistah Tsosie.  Testimony of Barrie Ross, M.D. (deposition transcript 41:11-42:24).*

78.  It is unlikely that Cistah Tsosie will ever work again.  *Testimony of Barrie Ross, M.D., (deposition transcript 42:16-19).  Testimony of Gerald Fredman, M.D., (deposition transcript 25:8-11).*

79.  Since the accident of August 29, 2002, Cistah Tsosie does not feel well enough to interact with her grandchildren the way she did before the accident, including playing with them and teaching them about life and Navajo traditions. *Testimony of Cistah Tsosie.  Testimony of Danley Tsosie.*

80.  Since the accident of August 29, 2002, Cistah Tsosie has not attended Pow Wows. *Testimony of Cistah Tsosie.  Testimony of Thomiscita Mountainsheep.  Testimony of Danley Tsosie.*

81.  Since the accident of August 29, 2002, Cistah Tsosie does not attend church. *Testimony of Cistah Tsosie.  Testimony of Danley Tsosie.*

82.  Since the accident of August 29, 2002, Cistah Tsosie listens to church ceremonies over the radio.  *Testimony of Cistah Tsosie.*

83.  Since the accident of August 29, 2002, Cistah Tsosie no longer sings.  *Testimony of Cistah Tsosie.*

84.  Since the accident of August 29, 2002, Cistah Tsosie no longer reads the bible due to the dizziness and headaches she gets when she reads.  *Testimony of Cistah Tsosie.*

85.  Since the accident of August 29, 2002, Cistah Tsosie does not participate in Traditional ceremonies except for ones held to help with her own health, due to her medical condition.  *Testimony of Cistah Tsosie.  Testimony of Thomiscita Mountainsheep.*

86.  Since the accident of August 29, 2002, Cistah Tsosie no longer rides horses. *Testimony of Cistah Tsosie.*

87.  After the accident of August 29, 2002, Cistah Tsosie found herself withdrawing from her family, friends and social events.  *Testimony of Thomiscita Mountainsheep.  Testimony of Danley Tsosie.*

88.  As a result of the injuries caused by the accident of August 29, 2002, Cistah Tsosie has suffered a loss in the enjoyment of life.  *Testimony of Cistah Tsosie.  Testimony of Danley Tsosie.  Testimony of Thomiscita Mountainsheep.  Testimony of Gerald Fredman, M.D. (deposition transcript 30:23-31:1).  Testimony of Barrie Ross, M.D. (deposition transcript 43:11-14).*

89.  Cistah Tsosie is expected to live to the age of 82.5.  See Mortality and Life Expectancy Tables listed in the Appendix to RAJI (Civil) 3d Personal Injury Damages, which

1  was stipulated to by counsel in the Final Pretrial Order filed with this Court.  See *Defendant's*

2  *Proposed Final Pretrial Order, filed June 24, 2005 (Page 2, C(1)(h)).*

3       90. Cistah Tsosie's uncontested past medical expenses total $39,326.41 (*see also Exhibit*

4  *11*).

5            a.  A breakdown of theses expenses is as follows:

6                 i.      $3,920.00 incurred at Indian Health Service Facilities;

7                 ii.     $23,017.73 incurred at private medical facilities;

8                 iii.    $6,389.65 incurred as a result of diagnostic evaluations;

9                 iv.    $2,774.78 incurred as a result of Traditional Navajo Ceremonies;

10                v.     $3,224.25 incurred due to medical mileage.

11      91.  It is probable that Cistah Tsosie will require medical care in the future which the

12  Court reasonably values at $100,000 in light of the evidence presented at trial and the trial

13  testimony.

14      92.  Cistah Tsosie lost two months of full-time income immediately following the

15  accident of August 29, 2002, which amounts to $5,273.60 (8 weeks at 40 hours per week x

16  $16.48 per hour).  *Testimony of Cistah Tsosie.  Exhibit 13:  Non-Exempt (classified) Contract*

17  *between Cistah Tsosie and WRCS.*[1]

18      93.  Cistah Tsosie further lost two months of half-time income following the accident of

19  August 29, 2002, which amounts to $2,636.80 (8 weeks at 20 hours per week x $16.48 per

20  hour).  *Testimony of Cistah Tsosie.  Exhibit 13: Non- Exempt (classified) Contract between*

21  *Cistah Tsosie and WRCS.*

22      94.  Cistah Tsosie lost six weeks of full-time pay in 2004 when she could not work due

23  to a fractured ankle she sustained after falling during an episode of vertigo, which amounts to

24

25            [1]Candor requires that counsel disclose that income tax returns in Exhibit 13 do not exactly

26  match the past wage loss claimed in this and the following paragraphs. Counsel does not know whether

27  Ms. Tsosie received overtime pay or accumulated leave or some other payment to account for the
    discrepancy.

28                                         - 12 -

1    $3,955.20 (6 weeks at 40 hours per week x $16.48 per hour).  *Testimony of Cistah Tsosie.*

2    *Exhibit 13:  Non-Exempt (classified) Contract between Cistah Tsosie and WRCS.*

3       95.  Cistah Tsosie lost 80 hours of full-time pay after being laid off on December 17,

4    2004 and 800 hours in 2005, which amounts to $14,502.40 (880 hours x $16.48 per hour).

5    *Testimony of Cistah Tsosie.  Exhibit 13:  Non-Exempt (classified) Contract between Cistah*

6    *Tsosie and WRCS.  Exhibit 2:  Report of Gerald Fredman, M.D.*

7       96.  Cistah Tsosie will incur future lost wages in the amount of $122,611.20 (800 hours

8    for the period of August – December 2005, 1600 hours per year for the years of 2006-2009, and

9    240 hours in 2010, which will bring Cistah to her 65th birthday.  A total of 7,440 hours x $16.48

10    per hour).  *Testimony of Cistah Tsosie.  Testimony of Barrie Ross, M.D., (deposition transcript*

11    *41:11-42:24).*

12       97. Cistah Tsosie has incurred physical pain and suffering from August 29, 2002 through

13    the present date.  Reasonable compensation for this past pain and suffering in light of the

14    testimony and evidence at trial is $100,000.

15       98.  It is probable that Cistah Tsosie will suffer future physical pain and suffering

16    resulting from the injury she suffered.  Reasonable compensation for this future pain and

17    suffering in light of the testimony and evidence at trial is $50,000.

18       99.  Cistah Tsosie has endured loss of enjoyment of life, and will continue to endure loss

19    of enjoyment of life.  *Testimony of Cistah Tsosie.  Testimony of Gerald Fredman, M.D.*

20    *Testimony of Barrie Ross, M.D.  Testimony of Thomiscita Mountainsheep.*

21       100.  Following the accident of August 29, 2002, Cistah Tsosie has been unable to enjoy

22    life in the manner that she did before the accident including such activities as working with

23    children, interaction with her husband and children, teaching her grandchildren, singing,

24    dancing, socializing, attending Pow Wows, attending church and traditional ceremonies,

25    cooking, weaving, gardening, and spending time with family and friends.  Reasonable

26    compensation for this past loss of enjoyment of life in light of the testimony and evidence at

27    trial is $200,000.

28

1    101.  It is probable that Cistah Tsosie will suffer future loss of enjoyment of life resulting

2   from the injury she suffered.  Reasonable compensation for this future loss of enjoyment of life

3   in light of the testimony and evidence at trial is $100,000.

4    102.  All of the foregoing damages were caused by the accident of August 29, 2002.

5   *Exhibit 1, Report of Barrie Ross, M.D.  Testimony of Barrie Ross, M.D.  Exhibit 2, Reports of*

6   *Gerald Fredman, M.D.  Testimony of Gerald Fredman, M.D.  Testimony of Cistah Tsosie.*

7                              **CONCLUSIONS OF LAW**

8    1.  Jurisdiction in this case is based on the Federal Tort Claims Act, 28 U.S.C. § 1346(b);

9   28 U.S.C. §§ 2671 - 2680 and 28 U.S.C. § 1331.

10    2.  The personal injury claims of Plaintiff Cistah Tsosie arise from the negligence, which

11   is not contested, of the Wide Ruins Community School, which is funded by the United Stated

12   Department of the Interior, Bureau of Indian Affairs.  Pursuant to 25 U.S.C. § 450f(d), claims

13   for such negligence may be brought against the Untied States under the Federal Tort Claims

14   Act.  Venue is proper in this District because all material acts occurred within the District of

15   Arizona.

16    3.  In actions brought under the Federal Tort Claims Act, the government's liability is

17   to be determined in accordance with the law of the place where the negligent act or omission

18   occurred.  28 U.S.C. § 1346(b)(1); *Taylor v. United States*, 821 F.2d 1428, 1430 (9th Cir. 1987),

19   cert. denied, 485 U.S. 992 (1988).

20    4.  Because the alleged negligence in this case occurred in the State of Arizona, Arizona

21   substantive law controls.  *Taylor v. United States*, supra at 1430; *Valencia v. United States*, 819

22   F. Supp. 1446, 1463 (D. Ariz. 1993).

23    5.   In Arizona, the elements of actionable negligence are generally expressed as the

24   existence of a duty owed by the defendant to the plaintiff, a breach of that duty and an injury

25   proximately caused by that breach.  *Flowers v. Kmart Corp.*, 126 Ariz. 495, 497, 616 P.2d 955,

26   957 (Ariz. Ct. App., 1980); *Ontiveros v. Borak*, 136 Ariz. 500, 667 P.2d 200 (Ariz. 1983).

27    6.  Liability for negligence in not contested in this case.

28                                    - 14 -

1    7.  If a court determines that a defendant is liable for negligence, it must then determine

2    the measure of damages in accordance with the law of the state where the negligence occurred.

3    *Shaw v. United States*, 741 F.2d 1202, 1205 (9th Cir. 1984).  However, the United States can not

4    be liable for interest prior to the judgment.  28 U.S.C. § 2674.

5    8.  In Arizona a plaintiff in a tort action is entitled to recover the full amount of money

6    that will reasonably and fairly compensate her for each of the following elements of damages

7    proved by the evidence to have resulted from the fault of the defendant:  (1) The nature, extent

8    and duration of the injury; (2) The pain, discomfort, suffering, disability, disfigurement and

9    anxiety already experienced, and reasonably probable to be experienced in the future as a result

10   of the injury; (3) Reasonable expenses of necessary medical care, treatment, and services

11   rendered, and reasonably probable to be incurred in the future; (4) Lost earnings to date, and any

12   decrease in earning power or capacity in the future; (5) Loss of love, care, affection,

13   companionship, and other pleasures of the marital and family relationship; and (6) Loss of

14   enjoyment of life, that is, the participation in life's activities to the quality and extent normally

15   enjoyed before the injury.   RAJI (Civil) 4th, ("Personal Injury Damages 1, Measure of

16   Damages.")  See, *Continental Life and Accident Co. v. Songer*, 124 Ariz. 294, 304, 603 P.2d

17   921, 931 (Ariz. Ct. App. 1979); *Ogden v. J.M. Steel Erecting, Inc.*, 201 Ariz. 32, 31 P.3d 806

18   (Ariz. Ct. App., 2001); *Wendelken v. Superior Court in and for Pima County*, 137 Ariz. 455,

19   671 P.2d 896 (Ariz. 1983) (In Banc.).

20   9.  The United States is liable for all injuries suffered by Cistah Tsosie as a proximate

21   result of the incident of August 29, 2002.  *Defendant's Proposed Final Pretrial Order, filed*

22   *June 24, 2005 (Page 3, C(2)(a)).  Statement of defense counsel at trial.*  See, *Jackson v. H.H.*

23   *Robertson Co., Inc.,* 118 Ariz. 29, 31-32, 574 P.2d 822, 824-826 (Ariz. 1978) (*res ipsa*

24   *loquitor*).

25   10.  Awards based on future damages are usually discounted to present value to account

26   for the fact that a plaintiff, by receiving the money in a lump sum, will invest the sum and earn

27

28                                                              - 15 -

1  additional income from the investment. *Trevino v. United States*, 804 F.2d 1512, 1517 (9th Cir.

2  1986), cert. denied 484 U.S. 816 (1987).

3         11.  In this Circuit the burden of proof regarding the reduction to present value after

4  taking into account future inflation and an appropriate discount rate is on the defendant. *Alma*

5  *v. Manufacturers Hanover Trust Co.*, 684 F.2d 622 (9th Cir. 1982). See, *Passantino v. Johnson*

6  *& Johnson Consumer Products, Inc.*, 212 F.3d 493, 508-09 n.13 (9th Cir. 2000).

7         12.  The United States failed to introduce any evidence regarding the reduction of future

8  damages to present value. The United States did present legal argument relevant to a reduction

9  of the reward to present value in its proposed findings of fact and conclusions of law. For this

10  reason the Court will direct the parties to confer regarding an appropriate discount rate and be

11  prepared to address this issue at a telephonic status hearing. The parties should also be prepared

12  and the Court will address the federal income tax treatment of the award for lost compensation

13  and loss of earning capacity.

14        13.  In accordance with the foregoing, IT IS ORDERED AWARDING Plaintiff Cistah

15  Tsosie total damages of $738,305.61, comprised of the following:

16              a.    Past pain, discomfort, suffering disability and anxiety: $100,000.

17              b.    Future pain, discomfort, suffering, disability, and anxiety: $50,000.

18              c.    Past medical expenses: $39,326.41.

19              d.    Future medical expenses: $100,000.

20              e.    Past lost wages: $26,368.00.

21              f.    Future decrease in earning capacity: $122,611.20.

22              g.    Past loss of enjoyment of life: $200,000.

23              h.    Future loss of enjoyment of life: $100,000.

24        14.  The Court concludes that Cistah Tsosie's head injury has diminished her capacity

25  to make financial decisions and manage her finances; accordingly, IT IS FURTHER ORDERED

26  that no funds should be paid to Cistah Tsosie until a Court of competent jurisdiction appoints

27  a guardian for her.

28

1       15.  Although the Court has the inherent power to order the parties to place a money

2  judgment into a reversionary trust, if such an arrangement is in the injured party's best interest,

3  *Hull v. United States,* 971 F.2d 1499, 1504 (10th Cir. 1992), cert. denied, 507 U.S. 1030 (1993),

4  the Court concludes that a reversionary trust is not appropriate in this case.  Instead, in order to

5  protect Ms. Tsosie, the Court will require that all funds awarded to Ms. Tsosie, after the

6  deduction for attorneys' fees, costs of litigation, payment of existing debts, and payment for

7  reasonable immediate needs, shall be placed in a private trust for the benefit of Cistah Tsosie

8  with a trust company licensed by any state as co-trustee.

9       IT IS FURTHER ORDERED setting a TELEPHONIC STATUS CONFERENCE to

10  address the appropriate discount rate, income tax allocation and other matters material to the

11  entry of judgment for Friday, March 17, 2006, at 2:00 p.m.

12       DATED this 8th day of March, 2006.

_____
David K. Duncan
United States Magistrate Judge

- 17 -